Good morning. May it please the court. My name is Richard Vick Sorek and I represent the appellant in this case, Jesus Rivas. Mr. Rivas has been sentenced to life in prison as well as a consecutive sentence of 75 years to life without being given the opportunity, which is guaranteed to him by the Constitution, to present a defense. The Court of Appeals of California then affirmed his conviction and dismissed his claim that he was not given the opportunity to present a complete defense by relying on an incorrect rule as well as making an unreasonable determination of fact. Now, of course, that's important because in order for this court to grant relief to Mr. Rivas, Mr. Rivas has to get over the bar that's been set by AEDPA, or more specifically, 28 U.S.C. 2254d. Now, a close analysis of this case reveals that, in fact, Mr. Rivas can get over that bar, and he can get over that bar in any one of the three ways that is allowed under that section. Counsel, let me tell you what, and actually both counsel can address this question, because it's what concerns me the most in this case. The trial judge made a discretionary decision related to the relevance of the proposed expert testimony to the issues in the case. And in affirming, the Court of Appeals made an incorrect factual statement, and what I'm struggling with, and specifically at ER 48, the Court of Appeals said that Dr. Wilson did not give a diagnosis of PTSD, and that's not true because at ER 486, he gives a diagnosis of post-traumatic stress disorder chronic. So the Court of Appeal, at least, relied on something, at least in part, not true. But the trial judge didn't. The trial judge understood Dr. Wilson's report. So which thing are we reviewing, and what difference does it make that there's this factual mistake in the Court of Appeal opinion? Well, Your Honor, this Court is reviewing the last reason decision of the California Court of Appeal, and that is where they got the fact wrong, which is why, again, Mr. Revis can get over the bar in any one of the three ways that is permitted under 2254D. Now, that would be 2254D-2, because the Court relied on an unreasonable determination of fact. Well, didn't, can one read the Court of Appeal as having really agreed with the trial court that, in fact, he mentioned PTSD as a diagnosis thing, but none of his discussion, the expert discussion, really indicates that PTSD is what informed what happened here, has anything to do with it? That seems to me you can read the Court of Appeal to be saying that, in effect. It might have given a general diagnosis, yeah, it was PTSD, but didn't connect it at all. Well, Your Honor, the connection was made by the proffer of the trial defense counsel. All that the expert, the psychiatrist, could testify to would be about what PTSD is, that it could affect his ability to actually form the intent required for the crimes at that time rather than diminished capacity. But that's not what the report said. Well, no, Your Honor, but the PTSD defense that was prevented was more than just the report of Dr. Wilson. The defense as a whole, that PTSD, having PTSD, affected his mental state at the time of the shootings, also included the testimony from Mr. Revis's cousin and his brother to show the facts leading up to how he acquired the PTSD, as well as an instruction regarding how the trier of fact should interpret evidence from the psychiatrist as it relates to the mental state and whether he actually formed the intent on that day. They indicated that how he had acquired it was, what, some 10, 12, 20 years, something earlier, and there's no indication whether he was really affected by it until this incident occurs in any desperate way, until this incident occurred. The psychiatrist certainly could have said that this is something that was likely to have affected what he did, but they didn't say that. They just said, well, this was a crime of passion and could have done it. And what the trial court says, this isn't really helping at all. There's no point to this document. And therefore, at this time, you can't pursue it. And we know that the second doctor he tried to get, we know now, tried to get, wasn't going to help him at all. Right? Yes, Your Honor. Well, the point you bring up... In other words, there's no scientific testimony being presented to the district, to the trial judge, that would indicate that there's any connection or any reason to think that PTSD has a thing to do with this case. Well, actually, yes, there is, Your Honor. The testimony that you're referring to, that it happened, the event that caused the PTSD to occur happened many years ago, that's precisely the type of testimony that the psychiatrist is there to give, and the finder of fact can then make that determination whether he or she wants to believe that on that actual day, the PTSD did manifest itself or not. So really all that the psychiatrist is going to testify to is explain what PTSD is, how it can affect someone, he diagnosed them as having PTSD chronic, and what that means, how it can lie dormant, and then be triggered by one event. Can you point in the record, I'm struggling too with this issue, and that is whether Dr. Wilson's report was probative of a trial issue. And for me, the trial issue was whether the doctor opined that, assuming petitioner had PTSD, whether that was connected to the shootings. It's not in the report, I don't believe. But cite me to the record that would bridge the gap, so to speak. Well, Your Honor, the cite to the record is the fact that he was diagnosed with PTSD. Now, the trial judge indicated that the report did not indicate what PTSD was. Now, the point of that is that that is why you need the psychiatrist to testify. A layman might sit there and say, I don't... I accept what you're saying there, but don't you need something more to preserve that for the record? We don't know whether the doctor was going to connect it or not, or how he was going to connect it. It did happen a long time ago, et cetera. There should be something that we can get a hold of here, and I'm not finding that handle. And remember, it's an AEDPA handle. Because without it, to me, there's no constitutional violation, there's no error. So what if it was a mistake? If it can't connect that condition to the crime, no harm, no foul. And again, what is in the record is in the psychiatrist's report that he had PTSD. Also, at 457 and 458, when the trial defense counsel proffered that Dr. Wilson, the psychiatrist, would testify that one single event, as the facts would indicate what happened on that day regarding dropping the wife off at work, coming to the realization she was not coming back to him, that PTSD could lie dormant. One event could trigger it many years later, and that is the proffer made by the trial defense counsel. That's what ties it together. And then he would argue that to the jury, because the rest of the facts would come out through the victim's testimony of what happened that morning regarding the shooting, and how it was that morning that he realized that there was no chance that she was coming back to him. Counsel, did you want to save any rebuttal time? Yes, Your Honor. Good morning. May it please the Court, Deputy Attorney General Blythe Leskay for responding. I think what the Court is struggling with here is the fact that the trial court didn't exclude PTSD evidence here. What the trial court was critical of was the defense proffer of the PTSD evidence. Would you answer my question, which is, are we looking directly at what the trial judge did, or are we instead instructed to look at what the Court of Appeals said? Well, this Court is reviewing the last reason decision of the State Court, which is the Court of Appeals' decision. And it incorrectly states a fact. What do we make of that? I agree that the Court of Appeals, when it said that there was no diagnosis of PTSD, that taken alone is incorrect. There was a diagnosis of PTSD. However, what I think that the Court was kind of saying in shorthand was that the PTSD evidence, or the diagnosis of PTSD, was really just a conclusory diagnosis. There was no explanation of what PTSD was. There was no explanation of how PTSD could affect the mental state. There was no explanation. Well, you know, that's what witnesses are for, when their testimony is offered. And the report, to me, is ambiguous at ER 487. This is Dr. Wilson's report. In the following respect, Dr. Wilson first has a paragraph where he says, in my opinion, this is a crime of passion, and he was very depressed. Then he goes on to say, complicating the picture, and he doesn't say the picture of what, but perhaps the picture of this crime, is the defendant's own history of witnessing his father, cousins, and uncle massacred in El Salvador when he himself was a young man of age 18. It's clear that this traumatized him. So, I mean, one way to read that report, and maybe this is where epidephrines comes in, because it's not the only way to read the report, but one way to read that report is, well, it looks like a crime of passion, but on the other hand, here's somebody who experienced great trauma, and that complicates the picture, whatever that means. So what are we to make of that? Well, I agree that the report is vague, and I think that that's the trial court, was the trial court's problem with the defense proffer. And it's true that that's, you know, witnesses are intended to kind of flush that out, but first, the defense has to show that they're not. Show that the witness, that this evidence would even be admissible. And for it to be admissible, the defense would have to show that the evidence is relevant, without any link. Well, wouldn't it be relevant if the witness got up and explained that what he meant by complicating the picture was the picture of why this crime occurred, that it might not just be a crime of passion, that maybe it's complicated, maybe it's also the result of PTSD? I mean, my reading of the report is the complicating of the picture is the defendant's kind of general mental state. The report, especially when speaking about the crime, was focused on the fact that the defendant was depressed. I mean, the report did discuss that. Yes. You know, the defendant was depressed because his wife was leaving him, and so his general mental state, sure, is it complicating. I mean, I would think that going through an event, a trauma like that, would complicate pretty much every event in your life. And does it matter that, do we have to take into account what the attorney said that this witness would testify to, how he would connect it up? Yeah, but even that, I think that the defense attorney was, again, not clear about how, I mean, he just made the statement that there was a link, but really, where's the evidence that there was a link? When you look at the facts of the case, the evidence clearly shows this was a premeditated, cold, calculated murder. There was nothing in the facts of what actually happened that would lend itself to a PTSD defense. There was nothing in the petitioner's prior history that would show that he was suffering or that this was something that happened to him, that he suffered from PTSD in any way that would make him behave in a way like this, or that would manifest itself in this kind of way. There's really no question about what happened here. There's no mystery. I mean, the petitioner was upset that his wife was leaving him. He was angry that she was seeing another man. He, you know, brought a gun to her workplace and his workplace and shot them both point blank. There's nothing in that that would suggest that PTSD played any part in it. And there's nothing in the doctor's report that would suggest that PTSD played any part in that. There's nothing that the defense counsel offered that would suggest that PTSD played any part in this crime. There was simply no link between the petitioner's diagnosis and the crimes that occurred here. And under ADEPA, don't we look at the evidence and hear the evidence that the petitioner may have suffered from or did in fact suffer from PTSD based on atrocities witnessed in his native country a long time ago? Does that have any likelihood to change the outcome of this case in light of all the other evidence? I would suggest absolutely not. I mean, I don't think there's any, based on what I just described, the evidence of this killing was a cold, calculated murder based on the petitioner's jealousy or anger that his wife was leaving him. There was, the PTSD really as proffered was irrelevant, and even if there was some link that was somehow established once the expert came in, there was no link. The petitioner testified there was evidence that there was another expert who said that the PTSD evidence was simply not supported. So there would have been contrary medical evidence. There was, as I said, there was simply nothing in the facts of the crime that showed that PTSD played any part in what happened here, even assuming that... And if it did, it would be relevant and should have been allowed. If the proffer had been sufficient to show that, then yeah, I think the trial court was open to that. And the trial court even made the statement, you know, I'm denying the admissibility of the PTSD evidence at this point. The trial court stated that. The defense counsel could have come back with additional evidence, more supportive evidence, something that would have bolstered this defense. I think the trial court absolutely would have been open to it. There was nothing that the trial court said that completely cut it off. The trial court had even approved funds for a different expert, because the defense counsel had complained about this Dr. Wilson's expert, and the trial court had approved funds. So I think for those reasons, and then if the court would like me to address the question in Miller, I think that would be helpful. Whether the Miller balancing factors should apply. I think that that issue is simply foreclosed by the United States Supreme Court's decision last year in Nevada v. Jackson, which reversed this court's Jackson decision, which was heavily relied on by the petitioner and the AOB. In Jackson, the Supreme Court held that it has not been clearly established that the Constitution requires a case-by-case balancing of interest before an evidentiary ruling. And that this rule can be enforced by the state, and the constitutional right to present a defense has only rarely been held to be violated by a state's application of evidentiary rules. This is simply not one of those rare cases. Well, we had said that in Moses, hadn't we? Correct. And I think that the court's decision in Moses is a proper analysis of what happened here. So it's not a Sixth or Fourteenth Amendment violation to exclude this, unless there's some sort of rigid rule. I suppose you could say it would fit if there's some sort of rigid rule that you never let this kind of evidence in. But that's not this case, I suppose. Right. If there was such a rule, that would be a very different situation. Here we're talking about a discretionary decision by the trial court. And again, the trial court's decision wasn't even in the complete exclusion of this evidence. It was just an exclusion of the evidence based on the defendant's proffer at this point. The trial court's made that statement several times. So the defense certainly could have come back with additional or different evidence to support its defense. For all these reasons, the court should affirm the district court's finding of no constitutional violation and that the state court was not unreasonable, unless the court has further questions I would submit. I don't believe we do. Thank you. Thank you. Mr. Fiserick, you have some rebuttal time remaining. Thank you, Your Honor. Very quickly, the excerpt of record 455-456 is where the trial defense counsel makes a proffer that he talked to the psychiatrist on the phone and the psychiatrist opined to him that the PTSD can affect the defendant's ability to formulate the required intent. And that's how it is tied together, if there are no further questions. How do you get around Moses? Well, Your Honor, there are a couple of ways. First, the holding of Moses was not accepted in a later case in Cudjoe, where Cudjoe did not accept the concept that the Supreme Court had not held that such a rule would apply to discretionary exclusions of evidence. Also, in Lunbury v. Hornbeak, this Court also found the same thing. So that is one way around it. The other way, Your Honor, is to really put a magnifying glass to the meaning of what a discretionary exclusion of evidence is. When you look at what does Moses mean when it says a discretionary exclusion of evidence, it's talking about such things as maybe under California Evidence Code 352, where you would weigh the probative value versus the prejudice. For evidence that would otherwise be coming in, the judge would then exercise his discretion to keep it out under some kind of test like that. But, however, in this case, the judge, by his statements on the record that this was not helpful to him, by the prosecutor's objection to the evidence, that it was simply irrelevant. The indication is that the evidence was kept out under California Evidence Code Section 350, which means that it's very similar in that scenario to Chambers, where the evidence is kept out by a rule rather than it's allowed in and the judge then exercises discretion. So that is the difference between this case. And that is a way that this court can grant relief to Mr. Rivas. Thank you, counsel. Thank you. We appreciate the arguments of both counsel, and the case is now submitted.
judges: Zouhary, Fernandez, Graber